**ALLACCESS LAW GROUP**
Irene Karbelashvili, State Bar Number 232223
irene@allaccesslawgroup.com
Irakli Karbelashvili, State Bar Number 302971
irakli@allaccesslawgroup.com
1400 Coleman Ave Ste F28
åSanta Clara, CA 95050
Telephone: (408) 295-0137
Fax: (408) 295-0142

Attorneys for DIXIE HUSTON AND JACKIE TONKEL,
Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DIXIE HUSTON and JACKIE TONKEL,

    Plaintiffs,

REYNOLDS RESORTS - COSTANOA,

    Defendant.

Case No. 4:21-cv-00738-HSG

*Civil Rights*

**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES:**

**1st Cause of Action**: For Denial of Access by a Public Accommodation Violation of the Americans with Disabilities Act of 1990.

**2nd Cause of Action**: For Denial of Full and Equal Access in Violation of California Disabled Persons Act.

**3rd Cause of Action**: For Denial of Access in Violation of California Health & Safety Code.

**4th Cause of Action**: For Denial of Access to Full and Equal Accommodations, Advantages, Facilities, Privileges and/or Services in Violation of the Unruh Civil Rights Act.

**DEMAND FOR JURY TRIAL**

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

## INTRODUCTION

1.     This is a civil rights action brought by DIXIE HUSTON AND JACKIE TONKEL (collectively, "Plaintiffs") against REYNOLDS RESORTS - COSTANOA, LLC ( "Defendant"). Plaintiffs allege that Defendant and its employees and agents knowingly and intentionally discriminated and retaliated against Plaintiffs in violation of the Americans with Disabilities Act and supplemental California law while Plaintiffs were overnight guests from September 26, 2020 to September 27, 2020 at Defendant's resort, campground, and related facilities, in Pescadero, California. At said time and place, Defendant failed to make reasonable accommodations in policies, practices, and/or procedures; failed to remove accessibility barriers, structural in nature; and retaliated against Plaintiffs all in violation of the Americans with Disabilities Act, the Unruh Civil Rights Act, the California Disabled Persons Act and the California Health and Safety Code. Accordingly, Defendant denied Plaintiffs access to the full and equal enjoyment of, opportunity to participate in, and benefit from, the goods, facilities, services, and accommodations thereof. Plaintiffs seek injunctive relief and damages pursuant to the Americans with Disabilities Act and related California laws.

## JURISDICTION

2.     This Court has jurisdiction pursuant to 28 U.S.C. §1331 for violations of the ADA, 42 U.S.C. 12101 et seq. Pursuant to supplemental jurisdiction, attendant and related causes of action, arising from the same facts, are also brought under California law.

## VENUE

3.     Venue is proper in this court pursuant to 28 U.S.C. §1391(b) and is founded on the facts that the real property which is the subject of this action is located at/near 2001 Rossi Rd, Pescadero, CA 94060 and Plaintiffs' causes of action arose in this district.

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

## INTRADISTRICT ASSIGNMENT

4.    Pursuant to Local Rule 3-2(d) this case should be assigned to the San Francisco or the Oakland Division as the property which is the subject of this action is located in San Mateo County and Plaintiffs' causes of action arose in San Mateo County.

## PARTIES

5.    Plaintiff Dixie Huston is a person with physical disabilities as defined by all applicable California and United States laws. Ms. Huston is 78 years old, who had a hip replacement; has chronic heart disease; two stents in her heart; and severe asthma. Due to her disabilities, Ms. Huston has limited range of motion (pulling, pushing, and lifting), and strength, especially in her arms hands, and legs. Ms. Huston's disabilities make it difficult for her to walk long distance without a cane and a walker. It is essential for Ms. Huston to have parking next to her living quarters. Otherwise, she cannot enjoy goods and services on equal basis with able-bodied patrons. Consequently, Ms. Huston relies on public facilities to be designed and/or constructed in compliance with applicable accessibility standards to accommodate persons with physical disabilities. Ms. Huston possesses a disabled parking placard issued by the State of California and is a resident of San Jose, California. Accordingly, Ms. Huston is a member of that portion of the public whose rights are protected by the provisions of Health & Safety Code §19955, *et seq.* and the protections of the Unruh Civil Rights Act, Civil Code §§51 and 51.5 the Disabled Persons Act, Civil Code §54, and the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.*

6.    Jackie Tonkel resides in San Jose, California and she brings this case for her own injuries suffered in her capacity as a person associated with a person with disabilities, pursuant to U.S.C. § 12182(b)(1)(E); 28 C.F.R. App. B, § 36.205. Ms. Tonkel is Dixie Huston's companion and wishes to be able to visit the subject premises in the future with Ms. Huston but is unable to do so because Defendants violated and continue to violate the Americans with Disabilities Act and

1 related California laws.

2 7.    On information and belief, Reynolds Resorts- Costanoa, LLC; is the owner, operator,

3 lessor and/or lessee, or agent of the owner, lessor, lessee, and/or alter ego, franchisor and/or

4 franchisee, of the business, property, buildings, parking lots, and/or portions thereof located at or

5 around 2001 Rossi Rd, Pescadero, CA 94060, known as Costanoa Coastal Lodge & Camp

6 (collectively, "Costanoa").

7 **FACTUAL ALLEGATIONS**

8 8.    Costanoa, its parking lot, entrance, customer restrooms, campground, and its other

9 facilities are each a "place of public accommodation or facility" and "business establishment"

10 subject to the barrier removal requirements of the Americans with Disabilities Act. On

11 information and belief, each such facility has, since July 1, 1970, undergone "alterations,

12 structural repairs and additions," each of which has subjected Costanoa and each of its facilities,

13 to disability access requirements per the 1991 and/or 2010 ADA Standards for Accessible

14 Design and the California Building Code.

15 9.    At all times referred to herein and continuing to the present time, Defendantadvertised,

16 publicized and held out Costanoa as being disabled accessible and disabled usable. Namely,

17 Defendant on its  website claims, in part, that "Costanoa is dedicated to providing an equivalent

18 experience . . .at our Lodge, Restaurant and General Store regardless of physical ability. To

19 uphold our commitment, we adhere to the requirement of 28 CFR 36.302€."

20 (https://costanoa.com/stay/accessibility/ )(last visited December 31, 2020).

21 10.    In an effort to escape a stressful world, Plaintiffs decided to go camping at Costanoa for

22 September 26, 2020, through September 27, 2020. On September 26, 2020,Ms. Tonkel loaded

23 her small 13 foot 1949 vintage trailer and headed to Pescadaro. Arriving around 3:45 p.m., Ms.

24 Tonkel signed in at the kiosk and headed to her camp site. Having unpacked and set up camp,

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND
DAMAGES

Ms. Tonkel then waited for her companion, Dixie Huston, to arrive. The plan was to get takeout at the Costanoa restaurant and take it back to the campsite for an evening of catching up and playing cards. While Ms. Tonkel waited, a man in an employee marked golf cart drove up and informed her of no fires in the pit due to the wind. Ms. Tonkel advised the man that it was not a problem and that her friend, who is disabled, was coming to stay overnight as well. Ms. Tonkel explicitly told the man that Ms. Huston would need to park behind the 13-foot trailer. The man looked at the ample space behind Ms. Tonkel's trailer, said "yes," and advised her that he would talk to the Costanoa management.

11.     Upon Ms. Huston's arrival, Plaintiffs sat in the trailer for a few minutes before unloading Ms. Huston's things and heading over to the restaurant for a drink. As Plaintiffs were preparing to make their way to the restaurant, the man who originally checked-in Ms. Tonkel into Costanoa arrived on a golf cart. Visibly angry, the man told Ms. Tonkel that she had signed a list of regulations that included a rule that only two vessels could be kept at the site. The man then told Ms. Tonkel that her companion's car needed to be kept at the overflow parking. Ms. Tonkel told the man that going back and forth to the restroom and restaurant would be hard for Ms. Huston if she was to park in the overflow parking because the overflow parking was hundreds of feet away and it would be extremely difficult, if not outright impossible, for Ms. Huston to use the restroom and the restaurant especially in light of the uneven terrain, cracks and dips in the pavement. Ms. Tonkel explicitly told the man that she wanted Costanoa to honor a request for a reasonable accommodation by allowing Ms. Huston to park behind Ms. Tonkel's trailer. The man refused to honor the request, telling Plaintiffs that they agreed to park in the overflow parking. Ms. Huston advise the man that she was not aware of the distance that she would have to travel from the overflow parking when she signed Costanoa's rules and regulations form. Ms. Huston again asked for the reasonable accommodation. Once again, the man told Plaintiffs, "no."

Confused and shocked by the man's response, Ms. Tonkel told him that she does not understand why her friend could not park behind the trailer considering that there was plenty of room in the parking stall from for both vehicles. Visibly frustrated, the man waived the paper that was signed by Ms. Tonkel, pointed his finger at Ms. Huston, and said, "you told me you'd park in the overflow parking." Ms. Tonkel once again tried to reason with the man and explained the difficulties that Ms. Huston would face if she had to park in the overflow parking. The man once again refused to the accommodation request. Confused and feeling defeated, Plaintiffs requested that they be allowed to speak to Costanoa's manager. The man then got angry, said that the Ms. Huston's car must be moved right away, and that he would be sending security. Ms. Tonkel once again asked for the manager, but the man simply left.

12. Moments later a large surly man with "security" written on his t-shirt arrived at Ms. Tonkel's trailer door. Ms. Tonkel asked why the manager could not come and speak to them. The man said, "the manager sent me." The security guard then firmly and angrily demanded that Plaintiffs move Ms. Huston's car or immediately leave the campground. Shocked by the lack of compassion, consideration, understanding, Ms. Tonkel again requested that they be allowed to speak to the manager. The security guard simply said to move the car or leave. Ms. Tonkel and Ms. Huston tried to explain why they were asking for a reasonable accommodation. The security guard became more adamant and said, "move the car or leave immediately and if you don't, I'll call the police." Ms. Tonkel tried to reason with the man saying, "we just got here and should not have to leave, we are simply asking Costanoa honor a request for reasonable accommodation for a disabled person." The security guard said, "I'm calling the police." Embarrassed and wishing to avoid being ejected from the campground, Ms. Huston stepped down from inside the trailer, moved toward her car and said, "fine, I'm moving my car." The security guard simultaneously walked to his golf cart and picked up his walkie talkie. Ms. Huston now standing by her car door

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

said, "I'm moving my car, so, are you really going to make us leave?" The security guard simply

said, "yes." and proceeded to use his walkie talkie to talk to someone at the kiosk. Shocked,

confused, and unsure if the police would actually be dispatched, the Plaintiffs drove Ms.

Huston's car to the restaurant at Costanoa. Plaintiffs parked in the designated accessible space

which was faded and without the necessary tow away signage and proceeded to order food and a

drink. Very shaken, the Plaintiffs tried to console the other about what had just happened to

them. They tried to process the unjust and ridiculous nature of their situation and reassured each

other that they could still salvage their weekend together. They discussed how Ms. Huston would

navigate the bathroom and campground if she did not have access to her car. They worried and

wondered if the security guard actually followed through on his threat of police intervention.

They hoped that because Ms. Huston agreed to move her car, the security guard had calmed

down and the situation would be resolved.

13.    Twenty to thirty minutes later, the same security guard marched toward Plaintiffs as

Plaintiffs sat on a bench sipping drinks with their dinner near the campground grocery store. The

security guard had two San Mateo Sheriff deputies walking behind him. The deputies then

surrounded Plaintiffs. One of the deputies told Plaintiffs that he was hoping that no one would

have to go to jail that day, that this was private property, and if Plaintiffs are asked to leave and

refuse, he would have to arrest Plaintiffs. Ms. Tonkel reminded the deputy that he had one side

of the story from the angry security guard and that Plaintiffs should be given the opportunity to

explain what happened. The security guard was then directed by the deputy to sit in a chair about

ten feet away and the deputies each took a seat in front of Plaintiffs. After Plaintiffs explained

what happened and ended by pointing out to the deputies that a disabled person's rights to enjoy

the campground were not being respected, one of the deputies then left with the security guard.

About fifteen to twenty minutes later, the deputy returned and told Plaintiffs that he spoke with

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND
DAMAGES

the manager and the manager's superior. The deputy then told Plaintiffs that if they did not cause any more "trouble," and parked Ms. Huston's car in the overflow parking, they could stay for the duration of the reservation through Sunday night. Ms. Tonkel agreed but clarified that, considering Ms. Huston's disabilities, she would need to drive Ms. Huston back and forth from the overflow parking.

14.     Plaintiffs slept poorly that night as a result of their experience at the hands of Costanoa's employees. The next day, Plaintiffs went to Pescadero for internet access for Zoom book study Ms. Tonkel agreed to do with friends. When Plaintiffs returned to Costanoa, Ms. Tonkel dropped off Ms. Huston at their site and drove the car back to the parking lot. Ms. Tonkel saw a Costanoa golf cart with two men and proceeded to ask them about paying for Ms. Huston's car for the second night. The younger of the two men told Plaintiffs that he spoke to the Sherriff's deputies the night before about how Plaintiffs could only stay at Costanoa for one of their two nights. The man claimed that Ms. Tonkel treated his employees terribly, acted like a child and was supposed to leave this morning. Exhausted, Ms. Tonkel said out loud, "I can't go through this again and that was not what the sheriff told us. I have their cards, and you should please call them." The man told Ms. Tonkel he would call the sheriffs and if she was wrong, they would have to leave Costanoa immediately and then he added the Plaintiffs were, "not welcome here again." Feeling unjustifiably shamed, mistreated, defeated and exhausted, the Plaintiffs spent their 2nd day on edge, but relieved they did not hear back from this man. Needing a peaceful night's rest for their second night, they instead had very poor sleep as a result of the bullying experiences with the employees of Costanoa.

15.     Before filing this lawsuit, Plaintiffs' legal representative also had a CASp-certified access consultant do an informal investigation of Costanoa. While he could not make detailed measurements, he determined that Costanoa was also inaccessible in multiple other ways,

including, but not limited to, the following barriers related to Dixie Huston's disabilities:

Restaurant:

- Parking by restaurant stripping is faded
- Parking by restaurant is missing ADA signage
- No tow away sign

Pine Village:

- No path of travel from parking to main building
- No ADA signage at parking
- No tow away sign

16.    On June 15, 2021 the parties took part in a General Order 56 inspection of Costanoa. The inspection was performed by Plaintiff's expert Bassam Altwal. After this inspection, Altwal generated a joint inspection report (the "Report") that reflected his findings during the June 15, 2021 inspection. According to the Report, the following barriers are present at Costanoa that are related to Ms. Huston's disability:

**Parking**

- The correct number of standard accessible and van accessible parking is NOT provided: 38 parking stalls only 1 ADA parking provided.
- There is NO contrasting colors letter address posted that indicates where the towed vehicles can be claimed.
- There is NO additional signage below the accessibility symbol stating, "Minimum Fine $250.00."

**Path of Travel to Restaurant/Cascade**

- The accessible route has abrupt vertical changes in level GREATER than ¼ in.

**Front Steps/Cascade**

- It does NOT take at least 5 seconds for the door to close (from an open position of 90 degrees to 3 in. from the closed position).

**Exit/Entrance Door to Bathroom/Cascade**

- It does NOT take at least 5 seconds for the door to close (from an open position of 90 degrees to 3 in. from the closed position).

**Bathroom at Cascade**

- It does NOT take at least 5 seconds for the door to close (from an open position of 90 degrees to 3 in. from the closed position).

**Front Entrance at Grocery Store**

- It does NOT take at least 5 seconds for the door to close (from an open position of 90 degrees to 3 in. from the closed position).
- Interior and exterior doors need MORE than 5 lbs of maximum pressure to operate.

**ADA Bathroom at Cascade**

- It does NOT take at least 5 seconds for the door to close (from an open position of 90 degrees to 3 in. from the closed position).
- The door CANNOT be opened with 5 lbs of pressure or less.
- The accessible route has abrupt vertical changes in level GREATER than ¼ in.
- The accessible route has horizontal gaps GREATER than ½ in.

17. Construction alterations, if any, carried out by Defendants have also triggered access requirements under both California law and the Americans with Disabilities Act of 1990.

18. Plaintiffs would return to the subject public accommodation if it is made accessible to persons with disabilities including reasonable modifications of policies and procedures.

### **CLAIMS FOR RELIEF**

### **FIRST CLAIM**

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

**Americans with Disabilities Act of 1990**

**(TITLE III USC §12101 *et seq.*)**

**(Against all Defendants and Each of Them)**

**Denial of "Full and Equal" Enjoyment and Use**

19.     Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in Paragraphs 1 through 18 of this Complaint and incorporates them herein as if separately repled.

20.     Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment or use of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

21.     Defendants discriminated against Plaintiff by denying "full and equal enjoyment" and use of the goods, services, facilities, privileges or accommodations of the Costanoa.

**Failure to Remove Architectural Barriers in an Existing Facility**

22.     The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). The term "readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." *Id*. § 12181(9).

23.     When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. *Id*. § 12182(b)(2)(A)(v).

24.     Here, Plaintiff alleges that Defendants can easily remove the architectural barriers without much difficulty or expense, and that Defendants violated the ADA by failing to remove

those barriers, when it was readily achievable to do so. In that regard, Defendants could have but did not avail themselves of the tax deduction and tax credits provided by Internal Revenue Code §44 and §190, which apply to the costs of barrier removal.

25.     In the alternative, if it was not "readily achievable" for Defendants to remove the barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

**Failure to Design and Construct an Accessible Facility**

26.     On information and belief, the Costanoa was constructed after January 26, 1992, independently triggering access requirements under Title III of the ADA.

27.     The ADA also prohibits designing and constructing facilities for first occupancy after January 26, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

28.     Here, Defendants violated the ADA by designing or constructing or both the Costanoa in a manner that was not readily accessible to the physically disabled public, including Plaintiff Dixie Huston, when it was structurally practical to do so.

**Failure to Make an Altered Facility Accessible**

29.     On information and belief, the Costanoa was modified after January 26, 1992, independently triggering access requirements under the ADA.

30.     The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires adding making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. *Id.*

31.     Here, Defendants altered the Costanoa in a manner that violated the ADA and was not

readily accessible to the physically disabled public, including Plaintiff Dixie Huston, to the maximum extent feasible.

### Failure to Modify Existing Policies and Procedures

32.     The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

33.     Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Costanoa when these modifications were necessary to afford and would not fundamentally alter the nature of these goods, services, facilities, or accommodations.

34.     Plaintiffs seek all relief available under the ADA *i.e.*, injunctive relief, attorney fees, costs, legal expense for these aforementioned violations. 42 U.S.C. § 12205.

### Retaliation

35.     42 U.S.C.§ 12203, provides:

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act.

> [And]

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this Act.

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

36. Defendants through their agents have retaliated against Plaintiffs, including, but not limited to, by intimidating them and calling law enforcement in response to Plaintiffs' request for a reasonable accommodation.

37. Defendants' conduct is discriminatory, outrageous and tortuous in violation of 42 U.S.C. § 12203

## SECOND CLAIM

### Disabled Persons Act

### (California Civil Code § 54 *et seq.*)

### (Against all Defendants and Each of Them)

38. Plaintiffs replead and incorporate by reference, as if fully set forth again herein, the allegations contained in Paragraphs 1 through 37 of this Complaint and incorporates them herein as if separately repled.

39. Costanoa is a place of public accommodation and/or places to which the general public is invited and, as such, they are obligated to comply with the provisions of the California Disabled Persons Act ("CDPA"), California Civil Code § 54 *et seq.*

40. The CDPA guarantees, inter alia, that persons with disabilities have the same right as the general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, public facilities, and other public places. California Civil Code § 54.

41. The CDPA also guarantees, inter alia, that persons with disabilities are entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, and privileges of covered entities. California Civil Code § 54.1(a) (1).

42. The CDPA also provides that a violation of the ADA is *a per se* violation of CDPA, California Civil Code § 54.1(d).

43. Defendants have violated the CDPA by, inter alia, denying and/or interfering with

1     Plaintiff right to full and equal access as other members of the general public to the

2     accommodations, advantages, and its related facilities due to his disability.

3     44.     Pursuant to the remedies, procedures, and rights set forth in California Civil Code §§

4     54.3, Plaintiff prays for judgment as set forth below.

5                              **THIRD CLAIM**

6                            **Unruh Civil Rights Act**

7                  **(California Civil Code §51 *et seq.*)**

8             **(Against all Defendants and Each of Them)**

9     45.     Plaintiffs replead and incorporates by reference, as if fully set forth again herein, the

10     allegations contained in Paragraphs 1 through 43 of this Complaint, and incorporates them

11     herein as if separately repled.

12     46.     Costanoa are a business establishment and, as such, must comply with the provisions of

13     the Unruh Act, California Civil Code § 51 *et seq.*

14     47.     The Unruh Act guarantees, *inter alia,* that persons with disabilities are entitled to full

15     and equal accommodations, advantages, facilities, privileges, or services in all business

16     establishments of every kind whatsoever within the jurisdiction of the State of California.

17     California Civil Code § 51(b).

18     48.     The Unruh Act also provides that a violation of the ADA, or of California state

19     accessibility regulations, is a violation of the Unruh Act. California Civil Code § 51(f).

20     49.     Defendants have violated the Unruh Act by, *inter alia,* denying, or aiding or inciting

21     the denial of, Plaintiffs' rights to full and equal use of the accommodations, advantages,

22     facilities, privileges, or services offered at Costanoa.

23     50.     Defendants have also violated the Unruh Act by denying, or aiding or inciting the

24     denial of rights to equal access arising from the provisions of the California state accessibility

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND
DAMAGES

regulations and the ADA.

51.     Pursuant to the remedies, procedures, and rights set forth in California Civil Code  § 52,

Plaintiff prays for judgment as set forth below.

### FOURTH CLAIM

### (California Health & Safety Code §§ 19955 *et seq.*)

### Denial of Full and Equal Access to Public Facilities

### (Against all Defendants and Each of Them)

52.     Plaintiffs replead and incorporates by reference, as if fully set forth again herein, the

allegations contained in Paragraphs 1 through 50 of this Complaint, and incorporates them herein

as if separately repled.

53.     The California Health and Safety Code § 19955(a) states, in part, that: California public

accommodations or facilities built with private funds shall adhere to the provisions of

Government Code § 4450.  Health and Safety Code § 19959 states, in part, that: Every existing

(non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or

structurally repaired, is required to comply with this chapter.

54.     Plaintiffs alleges the Costanoa is a public accommodation constructed, altered, or

repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code §

4450 or both, and that the Costanoa was not exempt under Health and Safety Code § 19956.

55.     Defendants' non-compliance with these requirements at the Costanoa aggrieved or

potentially aggrieved Plaintiffs and other persons with physical disabilities.

56.     Accordingly, Plaintiffs seeks injunctive relief pursuant to Health and Safety Code §

19953, *et seq*.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests:

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND
DAMAGES

1.     Issue a preliminary and permanent injunction directing Defendants as current owners, operators, lessors, and/or lessees of the property and premises to modify the above described property and premises and related facilities so that each provides full and equal access to physically disabled persons and issue a preliminary and permanent injunction directing Defendants to provide and maintain facilities usable by Plaintiffs and similarly situated persons with disabilities, and which provide full and equal access, as required by law, including appropriate changes in policy. Note: Plaintiffs are not invoking Civil Code, § 55 and is not seeking injunctive relief under that section;

2.     A declaration that Defendants are in violation of the Americans with Disabilities act for purposes of damages under state law;

3.     Retain jurisdiction over Defendants until such time as the Court is satisfied that Defendants' unlawful policies, practices, acts and omissions, and maintenance of inaccessible public facilities as complained of herein no longer occur, and cannot recur;

4.     Award to Plaintiffs all appropriate damages, including but not limited to statutory damages, general damages and treble damages in amounts within the jurisdiction of this Court, all according to proof;

5.     Award to Plaintiffs all reasonable statutory attorney fees, litigation expenses, and costs of this proceeding as provided by law;

6.     Award to Plaintiffs prejudgment interest pursuant to Civ. Code, § 3291; and

7.     Grant such other and further relief as this Court may deem just and proper.


Dated: February 28, 2022          _/s/  Irakli Karbelashvili_____
                                  Irakli Karbelashvili, Attorney for Plaintiffs
                                  DIXIE HUSTON and JACKIE TONKEL

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

### DEMAND FOR JURY

Plaintiff hereby demands a jury for all claims for which a jury is permitted.

Dated: February 28, 2022

/s/ Irakli Karbelashvili
Irakli Karbelashvili, Attorney for Plaintiffs
DIXIE HUSTON and JACKIE TONKEL

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES